[Cite as *State v. George*, 2024-Ohio-3123.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29954 |
| | : | |
| v. | : | Trial Court Case No. 23CRB2069 |
| | : | |
| AARON J. GEORGE | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on August 16, 2024

· · · · · · · · · · ·

COLIN P. COCHRAN, Attorney for Appellant

MARC T. ROSS, Attorney for Appellee

· · · · · · · · · · · ·

HUFFMAN, J.

{¶ 1} Aaron J. George appeals from his conviction on one count of assault following a bench trial in the Dayton Municipal Court. The assault occurred while George

was incarcerated at the Montgomery County Jail, and the victim was another inmate, E.D. George argued at trial and argues on appeal that his right to confront witnesses against him was violated by the use of a surveillance video of the assault at trial; E.D. did not testify. But the surveillance video of the assault contained no audio, and therefore there were no testimonial statements triggering an analysis pursuant to the Confrontation Clause. Therefore, we affirm the judgment of the trial court.

**Facts and Procedural History**

{¶ 2} The charge arose out of an altercation at the Montgomery County jail. On June 5, 2023, Sergeant Joseph Solomon of the Montgomery County Sheriff's Office was assigned to the jail and responded to a vestibule area, where he observed an inmate, E.D., who had been removed from his cell and was "very bloody" due to a laceration above his right eyebrow. Solomon also observed George, who was wearing a jail-issue white shirt with "one drop of blood" on his left sleeve. Solomon asked George if he had been involved in a fight, and George responded, "Something like that." Solomon obtained surveillance video of the incident, which had no audio.

{¶ 3} George was charged with assault on June 14, 2023, and pled not guilty. He was tried on August 26, 2023. Sergeant Soloman appeared to testify at trial, but E.D. was not present. At the start of proceedings, defense counsel moved to dismiss the matter in the absence of the complaining witness, but the court overruled the motion. At the conclusion of the State's case, defense counsel again requested dismissal, citing Crim.R. 29, because E.D. was not there to testify as to whether he had been harmed in any way and counsel could not "cross examine a video with no audio." The court

overruled the motion.

{¶ 4} George then testified about the incident. He stated that he had defended himself from E.D. during lunch, because E.D. had been "ranting and rambling talking about how many b****** he had and how much money he had" and was "just incoherent mumbling stuff." According to George, E.D. said "what they don't know is I will beat they face in"; George was concerned that this comment was directed toward him, specifically. George stated that, when E.D. "came towards the back, I felt like he was trying to set up to attack me, so I defended myself." George testified that he had "felt in fear for [his] safety" when E.D. walked toward him. According to George, George had been in the jail since April 25, 2023, without incident, prior to the altercation with E.D.

{¶ 5} Solomon identified E.D. and George in the video at trial. The video showed E.D. walking toward George, who was seated, but did not provide a particularly clear view of what happened next.

{¶ 6} After George testified, defense counsel renewed the Crim.R. 29 motion, and the court took the matter under advisement, noting that George seemed to be alleging that he acted in self-defense. The State later asserted in writing that it had not received a notice of self-defense, which had prevented the State from investigating or preparing for the elements it would be required to prove in a self-defense case. In response, George acknowledged that he had not provided notice of an intent to argue self-defense as required by Crim.R. 12.2 but asserted that "providing the State with sufficient notice would not have altered the evidence that the State presented at trial."

{¶ 7} On October 2, 2023, the court found George guilty of assault, and he was

sentenced accordingly.

## Assignment of Error and Analysis

{¶ 8} George asserts one assignment of error:

THE TRIAL COURT ERRED BY OVERRULING AARON GEORGE'S . . .

RULE 29 MOTION FOR ACQUITTAL FOR VIOLATION OF GEORGE'S

6TH AMENDMENT RIGHTS.

{¶ 9} George asserts that the trial court erroneously overruled his Crim.R. 29 motions for acquittal, which were "based on a violation of George's constitutional right to confront his accuser," because E.D. was not produced to be questioned about the alleged assault. George asserts that the record does not support that any subpoena, warrant, or other attempt was made by the State to produce E.D. at trial, and no evidence was presented about the State's efforts in that regard. According to the George, the State "failed to meet the level of effort" required by *State v. Smith*, 2010-Ohio-745, ¶ 10-15 (2d Dist.) to produce George's accuser.

{¶ 10} As a preliminary matter, we note that defense counsel raised the confrontation clause issue under Crim.R. 29 in the trial court and has also framed the argument in this way on appeal. Although a violation of the constitutional right to confront witnesses can constitute reversible error, it does not relate to the sufficiency of the evidence. Thus, we will address whether the trial court erred in how it addressed George's confrontation clause arguments, but we recognize that Crim.R. 29 was inapplicable to this situation.

{¶ 11} The Confrontation Clause of the Sixth Amendment states: "In all criminal

prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." "The Fourteenth Amendment renders the Clause binding on the States." *Michigan v. Bryant*, 562 U.S. 344, 352 (2011), citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Examples of testimonial statements include ex parte in-court testimony or its functional equivalent, such as affidavits and prior testimony that the defendant was unable to cross-examine, or pretrial statements that the declarants would reasonably expect to be used in a prosecution; extra-judicial statements contained in formal testimonial materials such as depositions, prior testimony, or confessions; and statements made under circumstances that would lead an objective witness to believe that the statement would be available for use at a later trial. *Id.* at 51-52.

{¶ 12} The Supreme Court has held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). "They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

{¶ 13} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth

of the matter asserted in the statement." "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A). Pursuant to Evid.R. 802, hearsay is generally inadmissible, but there are numerous exceptions set forth in Evid.R. 803 and 804. Moreover, certain types of statements are not hearsay pursuant to Evid.R. 801(D).

{¶ 14} George relies on *Smith,* 2010-Ohio-745, which noted that, "[a]s a general constitutional principle, the State bears the burden in criminal cases to produce the declarant regarding hearsay made at a prior judicial hearing, or to establish that the declarant is unavailable to testify." *Id.* at ¶ 10. *Smith* involved the admission of a redacted prior recording of a parole hearing at which the complaining witness testified against Smith. We held that Smith's "constitutional right to confront his accuser requires something more than the efforts that were made to secure [the witness's] appearance than was demonstrated by the State" in that case. *Id.* at ¶ 23.

{¶ 15} Here, the surveillance video of the assault contained no audio, and therefore no statements by E.D. were introduced to convict George. As the State points out, the primary purpose of the surveillance system at the jail is to maintain security and safety of the staff and inmates at the facility, not to gather evidence in furtherance of future prosecutions. We agree with this characterization. The video used in this case depicted the brief and bloody assault of E.D. by George, but it contained no statements or conduct that could arguably be characterized an assertion. As such, nothing in the video implicated the Confrontation Clause. *Smith* is inapplicable, as it involved the admission of statements made under oath at a prior proceeding. Under the circumstances of this

case, the State was not required to provide evidence of any efforts to produce E.D. for trial. George could have subpoenaed E.D. if he felt E.D.'s testimony would have been helpful to his defense. Because George's Sixth Amendment rights were not violated, the trial court did not err in overruling his motions.

{¶ 16} The assignment of error is overruled. The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and WELBAUM, J., concur.