[Cite as *State v. King*, 2024-Ohio-5643.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 24CA00009 |
| DONOVAN M. KING | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:    Appeal from the Guernsey County Court
of Common Pleas, Case No. 23-CR-101


JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    November 27, 2024


APPEARANCES:


For Plaintiff-Appellee    For Defendant-Appellant

LINDSEY ANGLER, ESQ.    CHRIS BRIGDON
Prosecuting Attorney    8138 Somerset Road
Guernsey County, Ohio    Thornville, Ohio 43-76
801 Wheeling Avenue
Cambridge, Ohio 43725

*Hoffman, J.*

**{¶1}**    Defendant-appellant Donovan M. King appeals the judgment entered by the Guernsey County Common Pleas Court convicting him following jury trial of domestic violence (R.C. 2919.25(A)), strangulation (R.C. 2903.18(B)(3)), and abduction (R.C. 2905.02(A)(2)), and sentencing him to an aggregate term of incarceration of 54 months. Plaintiff-appellee is the State of Ohio.[1]

STATEMENT OF THE FACTS AND CASE

**{¶2}**    In April of 2023, Appellant and the victim were involved in a long-distance relationship, and shared a baby together.  During Easter weekend of 2023, the victim traveled to Ohio to introduce the baby to Appellant's family.  The victim arrived in Ohio around 11:00 p.m. on Friday, April 8, and left the baby with Appellant's mother.  The victim then traveled to the Around the Corner Bar in Guernsey County, Ohio, where she met Appellant.  At the bar, the victim and Appellant argued over a woman the victim believed Appellant was dating.

**{¶3}**    During the evening of April 9, 2023, the victim and Appellant again went to the Around the Corner Bar.  Initially, Appellant took the victim around the bar, introducing her to his friends.  However, when two women entered the bar, Appellant refused to introduce the victim to the women.  The couple argued.  The victim went to the bathroom of the bar and locked herself inside.

**{¶4}**    While the victim was in the bathroom, Appellant messaged her, wanting her to come out of the bathroom.  Eventually he began yelling at the victim through the door.

---

[1] The State of Ohio has not filed a timely brief in the instant appeal.  The State's motion to file a brief instanter was filed after the case was submitted to this Court for decision, and was denied by this Court.

The victim told Appellant to leave her alone.  Appellant obtained the key for the bathroom and entered while the victim was using the restroom.

{¶5}  Appellant grabbed the victim by the throat with his hand, striking her head on a divider in the restroom and on the mirror.  The victim was in pain, could not breathe or scream, and believed she was going to die.  Appellant dragged then victim by her hair through the bar, with her pants still down around her ankles.  Appellant continued to drag the victim outside, throwing her to the ground.   The victim suffered a bloody nose and lip, and bruising on her elbow from the altercation.

{¶6}  The bartender came outside and took the victim to a storage room in the bar.  The victim exited the room through an outside door, and began picking up her things in the parking lot.  Appellant drove his car to her and insisted she get in his car.  When she tried to walk away, Appellant forced her inside his car.

{¶7}  Appellant was indicted by the Guernsey County Grand Jury with domestic violence, including a prior conviction specification; strangulation; and abduction.  The case proceeded to jury trial in the Guernsey County Common Pleas Court.

{¶8}  At trial, the State presented a videotape from Deputy Dylan Webster's body camera.  When Deputy Webster went to the bar to investigate the crime, an employee showed him security video from the bar on a computer monitor.  However, the employee did not know how to download the video to an external source.  The officer therefore recorded the video from the monitor to his body camera.

{¶9}  In his defense, Appellant presented the testimony of a bouncer at the bar. The bouncer testified Appellant was also working as a bouncer at the bar.  He testified on the night in question, Appellant had to remove an "unruly female" from the bar.  Tr. 379.

He testified Appellant merely tried to restrain the victim, who was "unable to control her actions," and guided her outside.  Tr. 380, 387.

**{¶10}** The jury found Appellant guilty of all charges.   The trial court convicted Appellant upon the jury's verdict and sentenced him to fifteen months incarceration for domestic violence, fifteen months incarceration for strangulation, and twenty-four months incarceration for abduction, to be served consecutively for an aggregate prison term of fifty-four months.   It is from the March 20, 2024 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. SHOULD THIS HONORABLE COURT REVERSE THE TRIAL COURT'S GUILTY VERDICT AND REMAND FOR A NEW TRIAL BECAUSE STATE'S EXHIBIT C DID NOT COMPLY WITH EVID. R. 901 – AUTHENTICATION.

II. SHOULD THIS HONORABLE COURT REVERSE THE TRIAL COURT'S GUILTY VERDICT AND REMAND FOR A NEW TRIAL BECAUSE STATE'S EXHIBIT C LACKED FOUNDATION PURSUANT TO EVID. R. 901.

III. SHOULD THIS HONORABLE COURT REVERSE THE TRIAL COURT'S GUILTY VERDICT AND REMAND FOR A NEW TRIAL BECAUSE DEPUTY WILSON LACKED PERSONAL KNOWLEDGE TO AUTHENTICATE STATE'S EXHIBIT C.

IV. SHOULD THIS HONORABLE COURT REVERSE THE TRIAL COURT'S GUILTY VERDICT AND REMAND FOR A NEW TRIAL

BECAUSE STATE'S EXHIBIT C DID NOT COMPLY WITH THE BEST EVIDENCE RULE.

V. SHOULD THIS HONORABLE COURT REVERSE THE TRIAL COURT'S GUILTY VERDICT AND REMAND FOR A NEW TRIAL BECAUSE THE ADMISSION OF THE VIDEO FOOTAGE THROUGH DEPUTY WILSON'S BODYCAM FOOTAGE VIOLATES THE SIXTH AMENDMENT RIGHT TO CONFRONTATION.

VI. SHOULD THIS HONORABLE COURT REVERSE THE TRIAL COURT'S GUILTY VERDICT AND REMAND FOR A NEW TRIAL BECAUSE THE ADMISSION [SIC] THE CONVICTION OF STRANGULATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### I., II., III.

**{¶11}** In his first three assignments of error, Appellant argues the trial court erred in admitting Exhibit C, the body camera video capture of the bar's security camera video, because Deputy Webster did not properly authenticate the video.

**{¶12}** "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.,* 58 Ohio St.3d 269, 271(1991).

**{¶13}** Pursuant to Evid.R. 901(A), authentication or identification is a condition precedent to admissibility of evidence, and the requirement is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." The rule provides a non-exhaustive list of illustrations as examples of authentication

conforming with the rule, including, pursuant to Evid.R. 901(B)(1), "testimony of a witness with knowledge that a matter is what it is claimed." The threshold for authentication is low and does not require conclusive proof of authenticity; rather, the proponent of the evidence need only demonstrate a "reasonable likelihood" that the evidence is authentic. *State v. Kammeyer*, 2020-Ohio-3842, ¶ 9 (3rd Dist.).

**{¶14}** Photographic evidence, including videotapes, can be admitted under a "pictorial testimony" theory or a "silent witness" theory. *Id.* at ¶ 10. "Under the pictorial-testimony theory, evidence is admissible 'when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation.'" *Id.*, *citing State v. Thyot*, 2018-Ohio-644, ¶ 19 (1st Dist.), *quoting Midland Steel Prod. Co. v. U.A.W. Local 486,* 61 Ohio St.3d 121, 129-130 (1991). "In authenticating evidence through this method, there is no need to call the witness who took the photographs [or video] as long as a witness with knowledge can testify that the photograph is a fair and accurate depiction." *State v. Scott*, 2013-Ohio-2866, ¶ 36 (12th Dist.).

**{¶15}** The video was not authenticated by Deputy Webster in the instant case, but was authenticated through the testimony of the victim. The State first played the video during the testimony of the victim. Appellant objected on the basis the victim was unable to authenticate the video. The trial court overruled the objection, finding the victim's testimony the video accurately captured the events which occurred in the bar sufficient authentication. When Deputy Webster testified, the State again asked to play the video. Appellant renewed his objection as to hearsay and the best evidence rule, but counsel stated he would "skip authentication." Tr. 301. The video was therefore admitted under

authentication provided earlier by the victim, and not through the testimony of Deputy Webster. Appellant does not argue the trial court erred in allowing the victim to authenticate the video. We find Appellant's argument Deputy Webster could not authenticate the video is without merit because Deputy Webster's testimony was not used by the State to authenticate the video.

**{¶16}** Further, we find the State presented sufficient testimony to authenticate the video under both the testimony of the victim and the testimony of Deputy Webster. The victim testified the video accurately represented the events which occurred in the bar. Deputy Webster personally viewed the original security video, and testified his body camera video was a true and accurate representation of the security video.

**{¶17}** In *State v. Handshoe*, 2023-Ohio-3205 (3rd Dist.), the appellant challenged the admission of a police body camera video. The victim recorded his brother's security camera video on his cell phone, and the officer recorded the cell phone video on his body camera video. The court held the video was properly authenticated where the victim and the officer both testified they viewed the video on the security monitor, and explained how the video came to be recorded from the cell phone to the body camera. In addition, a person present at the scene who appeared in the video testified regarding the accuracy of the video. *Id.* at ¶33. Similarly, in the instant case, Deputy Webster testified he observed the security video on the monitor in the bar, and explained the video was recorded on his body camera video because the person working in the bar did not know how to download the video. In addition, the victim, who was present in the video, testified as to accuracy of the events portrayed in the video. We find this is sufficient evidence to demonstrate the video is what it purports to be.

**{¶18}** Appellant also argues the video is incomplete because the bar employee fast-forwarded through certain portions, and argues the Deputy was unable to testify the original video was incapable of alteration. We agree with the trial court these issues do not affect the authentication of the video, but rather go to the weight to be given the evidence, not to its admissibility.

**{¶19}** The first, second, and third assignments of error are overruled.

IV.

**{¶20}** In his fourth assignment of error, Appellant argues the trial court erred in admitting the body camera video because its admission violated the best evidence rule.

**{¶21}** Evid. R. 1002 states, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio." Evid. R. 1003 provides, "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

**{¶22}** The decision to admit duplicates is within the sound discretion of the trial court. *State v. Tibbetts*, 92 Ohio St.3d 146, 160 (2001). The party seeking to exclude a duplicate has the burden of demonstrating the duplicate should be excluded. *Id.* A trial court does not abuse its discretion in admitting a duplicate where the party seeking to exclude the duplicate merely speculates regarding its authenticity. *Hanshoe*, *supra*, at ¶33.

**{¶23}** We find the trial court did not abuse its discretion in admitting the duplicate of the video.  Appellant's claim the original video might have been altered is speculative. Deputy Webster testified he recorded the body camera video while viewing the security video at the bar, the body camera video accurately represented the video he viewed at the bar, and his body camera video was unable to be altered.  Appellant did not meet his burden of establishing the duplicate should be excluded.

**{¶24}** The fourth assignment of error is overruled.

V.

**{¶25}** In his fifth assignment of error, Appellant argues the admission of the duplicate video violated his right to confront witnesses, in violation of the Sixth Amendment to the United States Constitution. Appellant argues he had the right to cross-examine the person responsible for creating, maintaining, and operating the recording system in order to challenge the authenticity and reliability of the video itself.

**{¶26}** Appellant failed to object to admission of the video on this basis at trial, specifically objecting only on the grounds of hearsay, authentication, and best evidence rule. Generally, when a party makes specific objections to the admission of evidence, he waives all other objections and cannot assert them on appeal. *State v. Smith*, 63 Ohio App.3d 71, 77 (11th Dist. 1989), *citing State v. Davis*, 1 Ohio St.2d 28, 32–33 (1964).  We find Appellant has waived a Confrontation Clause objection by failing to raise this objection in the trial court.

**{¶27}** Further, only testimonial hearsay implicates the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 821 (2006).  "[T]estimonial statements are those made for 'a primary purpose of creating an out-of-court substitute for trial testimony.' "

*State v. Maxwell*, 2014-Ohio-1019, ¶ 40*, quoting Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

**{¶28}** In *State v. George*, 2024-Ohio-3123 (2nd Dist.), the appellant was charged with an assault committed inside a jail. The State presented the jail's surveillance video of the assault, but the victim did not testify. The court rejected the appellant's Confrontation Clause argument:

> Here, the surveillance video of the assault contained no audio, and therefore no statements by E.D. were introduced to convict George. As the State points out, the primary purpose of the surveillance system at the jail is to maintain security and safety of the staff and inmates at the facility, not to gather evidence in furtherance of future prosecutions. We agree with this characterization. The video used in this case depicted the brief and bloody assault of E.D. by George, but it contained no statements or conduct that could arguably be characterized an assertion. As such, nothing in the video implicated the Confrontation Clause.

**{¶29}** *Id*. at ¶ 15.

**{¶30}** In the instant case, as in *George*, the video included no audio, and thus no testimonial assertions were made in the video. Further, unlike *George*, in the instant case the victim testified and was subject to cross-examination. Appellant does not argue he was denied to cross-examine any witness on a testimonial assertion made in the video, but rather only argues he was denied the right to cross-examine the person or persons

responsible for the security system as to the authentication of the video. We find the silent security video, made for purposes of surveillance of the bar for the safety and security of the bar staff and patrons, did not implicate the Confrontation Clause because no testimonial assertions were included therein.

**{¶31}** The fifth assignment of error is overruled.

VI.

**{¶32}** In his final assignment of error, Appellant argues the judgment convicting him of strangulation is against the manifest weight of the evidence. He argues the victim's testimony about Appellant choking her in the bathroom is inconsistent and not corroborated by the video evidence.

**{¶33}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 1997-Ohio-52, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175 (1st Dist. 1983).

**{¶34}** Appellant was convicted of strangulation in violation of R.C. 2903.18(B)(3):

(B) No person shall knowingly do any of the following:

(3) Cause or create a substantial risk of physical harm to another by means of strangulation or suffocation.

**{¶35}** R.C. 2903.18(A)(1) defines "strangulation" or "suffocation" as "any act that impedes the normal breathing or circulation of the blood by applying pressure to the throat or neck, or by covering the nose and mouth."

**{¶36}** The victim testified while she was in the bathroom, Appellant barged inside, and ripped her off of the toilet. She testified he held her up by her throat, and she could not breathe or scream. She testified she felt she was going to die. Because the incident occurred in the bathroom, it was not included in the security camera footage. We find the victim's testimony supported the conviction of strangulation, and the jury did not lose its way in believing the testimony of the victim. The conviction is not against the manifest weight of the evidence.

**{¶37}** The sixth assignment of error is overruled.

**{¶38}** The judgment of the Guernsey County Common Pleas Court is affirmed.

By: Hoffman, J.
Delaney, P.J. and
Baldwin,, J. concur